[Crim. No. 10389. Second Dist., Div. Four. Apr. 28, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. JEFFREY O'NEIL SKINNER, Defendant and Appellant.

Maurice Harwick, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Thomas Kerrigan, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged with possession of marijuana, in violation of section 11530 of the Health and

Safety Code. After a trial by the court (trial by jury having been duly waived), he was found guilty. The criminal proceedings were suspended and in November 1961 defendant was committed to the California Rehabilitation Center under the provisions of section 6451 of the Penal Code as that section then provided. In February 1964 he was discharged from that program and was returned to the criminal court for further proceedings.

On February 21, 1964, he appeared in court before Judge Diether, represented by private counsel; the matter was continued until February 28, 1964, in another department. He next appeared before Judge Snidow on February 27, 1964, still represented by the same counsel. A supplemental probation report was ordered and a further continuance, until March 12, 1964, was ordered; defendant was released on his own recognizance. On March 12, 1964, defendant, again being represented by the same counsel, the matter was again continued (by Judge Snidow) until April 16, 1964, in order to allow the probation officer more time to complete his report. Defendant did not appear on April 16th, a bench warrant was issued and he finally appeared on July 30, 1964, without counsel, before Judge Whyte. The proceedings on that date were as follows:

"THE COURT: Jeffrey O'Neil Skinner. Jeffrey O'Neil Skinner, is that your true name?

"THE DEFENDANT: Yes, sir.

"THE COURT: Mr. Skinner, you were some time ago arraigned before this court on a charge of violation of Section 11530 of the Health and Safety Code, tried and found guilty as charged, subsequently committed to the Narcotics Center for treatment. You were discharged from the Narcotic Center, returned to this courtroom.

"The case was twice continued, the second time of which you failed to show up, and this matter is now before the court on a bench warrant pick-up.

"Do you have private counsel?

"THE DEFENDANT: No, sir.

"THE COURT: Any money or property with which to employ private counsel?

"THE DEFENDANT: No, sir.

"THE COURT: You are now in custody?

"THE DEFENDANT: Yes.

"THE COURT: Do you desire the services of the Public Defender in connection with this matter?

"THE DEFENDANT: I don't think it is necessary, Your Honor.

"THE COURT: How did it happen you didn't show up when this matter was here on the 16th of April?

"THE DEFENDANT: I started out but I didn't make it. Then I went back and my lawyer said that he had appeared for me and it all round about, to sum it all up, I did 28 months out at the program, you know, and the way the Probation Department was talking to me when I went to see them he sounded like he was going to recommend probation and I in turn felt leery of coming back, so I didn't appear the next time.

"THE COURT: This matter will be continued two weeks; supplemental probation report requested."[1]

On August 13, 1964, defendant again appeared, again without counsel, before Judge Whyte, and the following proceedings took place:

"THE COURT: People versus Jeffrey O'Neil Skinner.

"Jeffrey O'Neil Skinner, is that your true name?

"THE DEFENDANT: Yes, it is, your Honor.

"THE COURT: On July 30 counsel was appointed to represent you in this matter.

"THE DEFENDANT: No, sir.

"THE COURT: Did you have private counsel?

"THE DEFENDANT: I was going to represent myself.

"MR. MALKAN: Who represented you in Dept. 100?

"THE DEFENDANT: I don't know. I haven't been informed of Dept. 100.

"THE COURT: This matter was before this Court on July 13 and a supplemental report was ordered at that time. At that time were you advised of your right to counsel or not?

"THE DEFENDANT: Yes, I was, your Honor.

"THE COURT: You declined to have counsel appointed; is that correct?

"THE DEFENDANT: Yes, sir.

"THE COURT: At this time do you still feel you desire to represent yourself or would you like the Court at this time to appoint Counsel to represent you?

"THE DEFENDANT: I feel I can talk for myself.

---

[1] We have augmented the record by examination of the original superior court file. It contains the original probation report, filed on November 6, 1961, a supplemental probation report, filed on November 15, 1961, and a second supplemental probation report filed on April 10, 1964. Presumably the latter is the supplemental report ordered by the court on February 27, 1964, the preparation of which induced the postponement of proceedings until April 16, 1964. But we can find no other probation report and are totally in the dark as to what response (if any) was made to the order of July 30th.

"THE COURT: What is the situation in regard to this Hermosa Beach charge?

"THE DEFENDANT: There is three forgery checks involved.

"THE COURT: This matter is before the Court on a charge of violation of probation. The Court has read the supplemental probation report.[2] You have had an opportunity to check that report.

"THE DEFENDANT: I don't believe I was ever on probation, your Honor.

"THE COURT: That is right, you were here before the probation report was ordered, after you had been committed under the narcotic program and the matter was back here.

"Have you had an opportunity to check this probation report?

"THE DEFENDANT: No, I haven't.

"THE COURT: All right, it is here. You take it over and read it and then return it to me and we will put this matter at the end of the calendar. I will talk to you further about it at that time.

"(A short recess was taken.)

"THE COURT: People versus Jeffrey O'Neil Skinner.

"Mr. Skinner, have you had an opportunity to read the probation officer's report? Is there anything you wish to present in your behalf?

"THE DEFENDANT: No, your Honor.

"THE COURT: It will be the order of the Court that probation be denied. The defendant will be sentenced to state prison for the term prescribed by law."

In addition to a contention as to unlawful search and seizure, counsel urges on us the lack of counsel at the last two critical court proceedings. In addition, our own examination of the record suggests a possible problem involving the rule of *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; and a violation of section 1200 of the Penal Code.

As appears from the recital of the events on July 30, 1964,

---

[2]As indicated above in footnote number 1, the only supplemental probation report issued after defendant was returned from the rehabilitation center was the one filed on April 10, 1964. That report is endorsed as having been read and considered by the judge who ordered it, who was not the judge presiding on July 30th or on August 13th. It is a matter of pure speculation whether the final judge also read and considered the April 10th report (though he did not so endorse it) and then gave that report to defendant for examination, or whether there was, in fact, some further report, prepared in response to the July 30th order, which was before the court and defendant on August 13th.

and on August 13, 1964, above set forth, the trial court never fully complied with the requirements of section 1200 of the Penal Code. That section provides: "When the defendant appears for judgment he must be informed by the court, or by the clerk, under its direction, of the nature of the charge against him and of his plea, and the verdict, if any thereon, and must be asked whether he has any legal cause to show why judgment should not be pronounced against him." The opening statement by the court on July 30, 1964, complied with this requirement only in part—it did not advise defendant why he was "returned to this courtroom," although we may presume that defendant had some general idea on that point; more important, the court did not, then or ever, ask defendant whether he had "any legal cause to show why judgment should not be pronounced against him."[3]

We have found no case which squarely determines the issue now before us. In one early case, noncompliance with section 1200 was held to be reversible error. (*People* v. *Walker* (1901) 132 Cal. 137 [64 P. 133].) But, as was pointed out in *People* v. *Hawthorne* (1944) 63 Cal.App.2d 262, 264-265 [146 P.2d 517], that case was decided long before the adoption of article VI, section $4\frac{1}{2}$ of our state Constitution and it is not helpful in deciding whether, at this date, error with respect to section 1200 is prejudicial error.

In two cases (*In re Levi* (1952) 39 Cal.2d 41 [244 P.2d 403]; *People* v. *DeWaele* (1964) 224 Cal.App.2d 512 [36 Cal. Rptr. 825]), there was not only noncompliance with section 1200, but also no assistance of counsel, no advice of the right to counsel and (therefore) no intelligent waiver of counsel.

In five cases, the appellate court has held that the trial court had complied substantially with the requirements of section 1200.[4] In two cases, the appellate court held that defendant

---

[3]The nearest approach to allocution was on August 13th, when, after asking defendant if he had read "the probation officer's report," the judge asked him: "Is there anything you wish to present in your behalf?" This inquiry so clearly invited comment only on the probation report (of mysterious content as discussed in footnote number 2) that it cannot be regarded as an invitation to show "legal cause" why judgment should not have been pronounced.

[4]In *People* v. *Henry* (1948) 86 Cal.App.2d 785, 790 [195 P.2d 478], although the clerk's transcript was silent, the reporter's transcript showed a full compliance.

In *People* v. *Cross* (1963) 213 Cal.App.2d 678 [28 Cal.Rptr. 918], the court concluded that the proceeding, as a whole, complied.

In *People* v. *Ector* (1965) 231 Cal.App.2d 619 [42 Cal.Rptr. 388], defendant was before the court for sentence on one charge and for sentence after revocation of probation on another; the court held that a single arraignment for judgment was sufficient.

had waived full compliance with section 1200.[5]

In three cases, the appellate court found error in a failure to comply with section 1200, but also found that, on the record in those cases, no prejudice appeared. (*People* v. *Rocha* (1955) 130 Cal.App.2d 656, 663-664 [279 P.2d 836] ; *People* v. *Hawthorne* (1944) 63 Cal.App.2d 262, 264-265 [146 P.2d 517] ; *People* v. *Swift* (1934) 140 Cal.App. 7 [34 P.2d 1041].) In all of these cases a motion for new trial had been made and denied, no ground for a motion for arrest of judgment existed, and there was no suggestion that the only remaining possible ''legal cause''—present insanity—existed.

Finally, in *People* v. *Thomas* (1955) 45 Cal.2d 433, the Supreme Court said, by way of dicta, at page 438 [290 P.2d 491] : ''In any event, while the requirement (Pen. Code, §§ 1200, 1201) that the question [as to legal cause] be asked is substantial and a failure to ask it is fatal to the judgment if defendant has been deprived of counsel (*In re Levi*, 39 Cal.2d 41 [244 P.2d 403]) it is not fatal where defendant is present and represented by counsel and no prejudice appears [citations].''

■ Against this background of somewhat uncertain authority, we conclude that, looking at the present record as a whole, the failure to comply strictly with section 1200 was

In *In re Brahm* (1929) 98 Cal.App. 731, 736 [277 P. 895], there had been a proper arraignment for judgment, in full compliance with section 1200; a long discussion followed as to the proper sentence and the matter was continued to the next morning when, after more discussion between court and counsel, judgment was pronounced; the holding was that, under these circumstances, there was but a single proceeding and that the statements required under section 1200 need not be repeated after such a recess.

In *People* v. *Sauer* (1945) 67 Cal.App.2d 664 [155 P.2d 55], defendant, represented by counsel, withdrew a not guilty plea and pled guilty, time for pronouncing judgment was formally waived and court, counsel and defendant discussed the matter of sentence, after which section 1200 was complied with and sentence pronounced; the court held that, whenever in this process defendant was deemed to have ''appeared'' for judgment, the statutory requirement was met.

[5]In *People* v. *Glancy* (1963) 213 Cal.App.2d 629 [28 Cal.Rptr. 903], defendant had duly waived counsel. He became ill and the trial was continued. At his request, the court and officers went to his hospital room, where he expressed a desire to change his plea of guilty on one count. This was permitted and defendant then expressly waived a probation report and asked that the judge ''sentence me now.'' It was clear that defendant intelligently desired an immediate sentence, and had no desire to interpose any objections to that result. The court held that compliance with section 1200 was waived.

In *People* v. *Straw* (1962) 209 Cal.App.2d 565, 567 [26 Cal.Rptr. 461], defendant was represented by counsel; section 1200 was not complied with, but counsel interposed no objection. It was held that the error was waived.

fatal to the judgment. Unlike *Rocha, Hawthorne* and *Swift,* no motion for a new trial had yet been made. Since judgment had not been pronounced, such a motion was still timely.[6] Lacking the allocution required by section 1200, and lacking any other advice as to his rights, it is clear that defendant was not made aware that that remedy, or indeed any remedy, was open to him beyond the single one expressly suggested by the trial court—namely to comment on the probation report.[7] Under the circumstances, the failure to comply fully with section 1200 denied defendant a fair hearing at the time judgment was pronounced.[8]

The judgment pronounced on August 13, 1964, is vacated; the case is remanded for further proceedings consistent with this opinion.

Files, P. J., and Jefferson, J., concurred.

---

[6]The record shows that an automobile in which defendant was a passenger had been stopped by the police for an equipment violation. Defendant alighted, started to walk away, was stopped, ''marks'' were seen on his arms, and he was arrested. It would be inappropriate for us, at this stage, to discuss the sufficiency of the evidence to show probable cause for the arrest. The power, and the duty, of a trial court in ruling on a motion for a new trial is far wider than is our power on appeal. (*People* v. *Robarge* (1953) 41 Cal.2d 628, 633 [262 P.2d 14].) We cannot say what view of the evidence the trial court might take when it exercises its broader power of review. The cases cited in the briefs of the respective counsel on this appeal indicate that such a motion would raise issues that are reasonably debatable.

[7]If, in fact, the probation report given to defendant to read was the report filed in April 1964, which report had recommended probation, it is understandable that defendant saw no reason to comment thereon.

[8]We note, for the benefit of the trial court on remand, that defendant argues in this court that the trial court should not have allowed him to represent himself without first having ''delved into the education, experience and mental competence and conduct of the accused necessary to show a proper waiver of the right to counsel.'' We assume that, when defendant is rearraigned for judgment, the court will appoint an attorney unless defendant again waives counsel and satisfies the court that his waiver is intentional and intelligent.